*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEANGELO JORDAN,

Defendant-Appellant.

UNPUBLISHED
September 05, 2025
12:01 PM

No. 365997
Wayne Circuit Court
LC No. 22-003658-01-FC

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals his jury convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (sexual penetration of a victim 13 years or younger by a person over 17), and six counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (sexual contact with a victim 13 years or younger by a person over 17). The trial court sentenced defendant to 25 to 40 years for the CSC-I convictions and 10 to 15 years for the CSC-II convictions. Defendant was also sentenced to lifetime registration under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, and lifetime electronic monitoring.

On appeal, defendant challenges the trial court's denial of his motion for a mistrial, raises several claims of evidentiary error, and argues that his sentences to lifetime SORA registration and electronic monitoring are unconstitutional. We affirm defendant's convictions and sentences but remand for the ministerial task of correcting the judgment of sentence to reflect the imposition of lifetime electronic monitoring.

## I. BACKGROUND

This case arises from defendant's sexual abuse of two minor victims, AE and ME. At the time of the offenses, defendant was in a relationship with the victims' mother, and the abuse occurred in the home he shared with the victims, their mother, and their brother.

At trial, AE testified to multiple instances of sexual abuse by defendant, beginning when she was 11 years old and defendant was 34. On one occasion, defendant touched her inappropriately over her clothes while they played video games. In another instance, he touched

-1-

AE's genitals over and under her clothes while her mother was asleep in the same bed. Defendant also touched her genitals over her clothing while they were on the living room couch.

ME also described numerous assaults by defendant, beginning when she was nine years old. The first assault occurred when defendant touched ME's chest under her clothes while they played video games. A second incident occurred when defendant touched ME's chest under her clothes while her mother slept in the same bed. Defendant again touched ME's chest under her clothes while they watched movies in the living room.

Other witnesses, including the victims' mother, also testified at trial. Following the presentation of evidence, the jury convicted defendant of two counts of CSC-I and three counts of CSC-II as to AE and three counts of CSC-II as to ME. The trial court sentenced defendant as described above. Defendant now appeals.

## II. DISCUSSION

## A. MOTION FOR MISTRIAL

Defendant first claims that the trial court erred in denying his motion for a mistrial after the victims' mother referenced his prior incarceration during her testimony. He contends that the reference to his criminal history was highly prejudicial and that the trial court's curative instruction was insufficient to remedy the harm.

A mistrial should be granted only "for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (cleaned up). We review a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Boshell*, 337 Mich App 322, 335; 975 NW2d 72 (2021). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *People v Baskerville*, 333 Mich App 276, 287; 963 NW2d 620 (2020).

Here, the victims' mother was asked on direct examination when she started dating defendant, to which she replied, "A little bit before he got out of prison." Defense counsel objected, the jury was excused, and defense counsel moved for a mistrial. The court denied the motion, finding the answer improper but unresponsive to the question posed, and concluded that a curative instruction would adequately address any prejudice. The court then instructed the jury to disregard the statement regarding prison and not to consider it in any way.

The reference to defendant's previous incarceration was improper. See *People v Stinson*, 113 Mich App 719, 726-727; 318 NW2d 513 (1982)[1] ("Evidence of a defendant's past criminal record is inadmissible until such time as the defendant takes the witness stand and raises the issue

---

[1] "Although published opinions of this Court decided before November 1, 1990, are not strictly binding, MCR 7.215(J)(1), they are nevertheless precedential, MCR 7.215(C)(2), and they are thus afforded significantly more deference than would be given to unpublished cases." *People v Spaulding*, 332 Mich App 638, 657 n 5; 957 NW2d 843 (2020).

of his character or credibility."). However, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). In determining whether a mistrial is warranted based on improper testimony, "[t]he trial court may consider, among other things, whether the prosecutor intentionally presented the information to the jury or emphasized the information." *Lane*, 308 Mich App at 60. Here, the prosecutor's question—when the witness and defendant started dating—did not call for testimony regarding defendant's prior incarceration, rendering the response unresponsive to the question posed. There is no evidence that the prosecutor intentionally elicited or emphasized the improper testimony.[2]

Moreover, the trial court struck the improper testimony and instructed the jury not to consider it. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). We are not persuaded that the prejudicial effect of a single reference to defendant's prior incarceration was so significant that it could not be cured by the trial court's instruction. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

## B. *BRADY* VIOLATION

Defendant next submits that he is entitled to a new trial because the prosecutor failed to timely disclose evidence favorable to the defense in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We review alleged *Brady* violations de novo. *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022).

"Defendants have a due process right to obtain evidence in the possession of the prosecutor if it is favorable to the accused and material to guilt or punishment." *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994); accord *Brady*, 373 US at 87. "To establish a *Brady* violation, a defendant must show that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Christian*, 510 Mich at 76 (quotation marks and citation omitted).

In this case, the victims and their mother testified there were security cameras throughout the family home, including in rooms where the abuse occurred, and that only defendant had access to them. On the third day of trial, after the victims and their mother testified, the lead detective testified that she learned of the cameras' existence from various sources, including the victims' mother. The victims' mother gave the detective permission to retrieve the cameras, but the detective was unable to arrange a time to do so in the following weeks. The detective prepared a search warrant, but before it was executed, the victims' mother provided the cameras to law enforcement. Law enforcement was unable to extract any footage because the cameras did not contain memory cards.

On appeal, defendant contends that the prosecution violated *Brady* by failing to disclose evidence regarding the production of the cameras until the third day of trial. He argues that this

---

[2] Nor, as defendant contends on appeal, is there any evidence that the witness intentionally offered the improper testimony for the purpose of prejudicing him.

late disclosure prevented his counsel from effectively presenting the evidence, as it came after the victims' mother had completed her testimony and, according to defendant, the trial court did not allow him to recall her. Defendant claims he was deprived of the opportunity to cross-examine the victims' mother about her decision to produce the cameras, which he asserts would have shown the jury that she was "anxious to see" him arrested.

Assuming for the sake of argument that the prosecution's disclosure was untimely and satisfied the first prong of the *Brady* analysis, defendant is not entitled to a new trial because he has not met the second and third prongs.

Concerning the second prong, defendant has not shown that the evidence was favorable to him. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). The manner in which police received the cameras—whether from the victims' mother or via search warrant—was neither exculpatory nor impeaching. Nothing about this evidence undermines the victims' mother's testimony.

Regarding the third prong, defendant has not demonstrated that the evidence was material. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (cleaned up). The detective's testimony informed the jury that the victims' mother provided the cameras to law enforcement and that no footage could be recovered because the cameras lacked memory cards. That evidence was presented to the jury, and defendant was free to argue that the victims' mother may have tampered with or destroyed the footage.

Moreover, contrary to defendant's assertion on appeal, the late disclosure did not deprive him of the opportunity to cross-examine the victims' mother about the cameras. After the detective's testimony, defense counsel raised the issue and indicated that, had he known about the evidence earlier, he would have questioned the victims' mother about the circumstances under which she provided the cameras. The trial court concluded that the relevant information could be elicited through the detective's testimony but nonetheless offered defense counsel the opportunity to recall the victims' mother. Defense counsel did not take advantage of that opportunity. The late disclosures therefore did not preclude defendant from cross-examining the victims' mother regarding the cameras.

Because defendant has not established a *Brady* violation, he is not entitled to a new trial on that basis.

## C. ADMISSIBILITY OF EVIDENCE

Defendant contends that he is entitled to a new trial based on two evidentiary errors. Because defendant did not object to these issues at trial, our review is for plain error affecting substantial rights. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). To establish plain error, a defendant must show that "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (cleaned up). Even if those requirements are met, reversal is warranted only if the error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness,

integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (cleaned up).

## 1. HEARSAY TESTIMONY

During direct examination, the detective described AE's demeanor during a forensic interview, noting that AE was crying and did not want to discuss the sexual abuse. The detective testified, "[S]he was asked questions. She was more self-pointing. She'll give simple answers, but she was more self-pointing to the areas . . . in regards to body parts." Defendant contends that the detective's description of AE pointing to her body parts constituted impermissible hearsay, and the trial court plainly erred by admitting the testimony.

"In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015), citing MRE 801 and MRE 802. For purposes of the rule against hearsay, a statement includes "nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a)(2).

Even assuming the challenged testimony was impermissible hearsay, defendant has not demonstrated prejudice. Defendant claims the hearsay "served only to bolster the complainant's testimony," but we disagree. The detective's account was both brief and vague. The detective did not identify which body parts AE indicated or the questions to which she responded. Testimony that AE pointed to unspecified body parts in response to unspecified questions did not materially reinforce her more detailed in-court testimony. Defendant has not shown that this testimony affected the outcome of the proceedings.

## 2. OTHER-ACTS EVIDENCE

Defendant also contends that the victims' mother offered impermissible other-acts evidence during her direct examination:

> *Q.* Now, I want to ask you about and [defendant's] dating relationship. In general, how would you say that you guys got along?
>
> *A.* Okay.
>
> *Q.* Uhm, anything major, as far as physical altercations?
>
> *A.* Yes.
>
> *Q.* Okay. And how often would that occur?
>
> *A.* Twice that I can remember.
>
> *Q.* Okay. So, this wasn't an often thing?
>
> *A.* No.

*Q.* Did the Police have to come out?

*A.* I didn't call 'em.

Generally, evidence of prior bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith." *People v Jackson*, 498 Mich 246, 258; 869 NW2d 253, quoting MRE 404(b)(1). But when a defendant is charged with an offense involving sexual assault or domestic violence, "evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant," subject to MRE 403. MCL 768.27b(1).[3]

At the time of trial, MRE 401 defined "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "The language of MCL 768.27b clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011) (quotation marks and citation omitted). Evidence of this nature is admissible "because a full and complete picture of a defendant's history tends to shed light on the likelihood that a given crime was committed." *Id*. at 610 (cleaned up).

Defendant first avers that the evidence was inadmissible because the prosecutor failed to provide him notice as required by MCL 768.27b(2), which mandates disclosure at least 15 days before trial. Assuming for the sake of argument that notice was not provided, the admission was erroneous. But to warrant relief, defendant must show that the error was plain, "i.e., clear or obvious." *Anderson*, 341 Mich App at 279. While MCL 768.27b(2) requires notice, it prescribes no particular method. Informal notice to defense counsel would have sufficed. Absent any indication that the trial court was aware of a lack of notice, defendant has not shown a clear or obvious violation of the statute.

Defendant also asserts that evidence of prior domestic violence is inadmissible when the charged offense is sexual assault. This Court has rejected that contention, holding that MCL 768.27b(1) applies reciprocally:

> The plainly expressed meaning of [MCL 768.27b(1)] is that, when a defendant is charged with an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible under MCL 768.27b(1) . . . . The same is true when a defendant is charged with an offense involving sexual assault—evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible under

---

[3] MCL 768.27b was amended after defendant's trial through the adoption of 2024 PA 184, effective April 2, 2025. Citations and references to MCL 768.27b in this opinion refer to the version in effect at the time of the trial.

MCL 768.27b(1) . . . . [*People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 5.]

That argument therefore fails.

Finally, defendant contends that the evidence was unfairly prejudicial under MRE 403, which at the time of trial provided that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001) (citation omitted).

Courts applying MRE 403 in this context consider the following factors set forth in *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012):



(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*People v Skippergosh*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364127); slip op at 7 (quotation marks and citation omitted).]

Further, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487.

Here, the other acts were dissimilar, involving domestic violence against an adult rather than sexual assaults against children. That factor weighs against admission. But the acts occurred within about one year of the charged crimes, which supports admission. While two incidents may appear infrequent in isolation, they occurred during a relationship of roughly only one year, making the third factor neutral. See *People v Hoskins*, 342 Mich App 194, 207; 993 NW2d 48 (2022) (holding that two sexual assaults admitted as other-acts evidence were not "so infrequent[] as to support exclusion of the evidence"). There is no evidence of intervening acts, and the record does not undermine the credibility of the victims' mother, so the fourth and fifth factors weigh in favor of admission. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016). As for the sixth factor, the absence of physical evidence and the fact that the only witnesses were the victims and defendant increase the probative value of the other-acts testimony.

On balance, the *Watkins* factors support admissibility. Defendant has not shown that the danger of unfair prejudice substantially outweighed the probative value of the other-acts evidence, nor that its admission was plain error.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues in the alternative that trial counsel provided ineffective assistance by failing to object to the testimony referencing his incarceration, the detective's testimony describing AE's demeanor, and the victims' mother's testimony about prior domestic violence.

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *Id*. (citation omitted). We review the trial court's factual findings for clear error and questions of law de novo. *Id*. Because no *Ginther*[4] hearing was conducted, "our review is limited to mistakes that are apparent from the record." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

Both the Michigan and United States Constitutions guarantee criminal defendants the right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant seeking a new trial on the basis of ineffective assistance of counsel "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (quotation marks and citation omitted).

With respect to the testimony referencing incarceration, defendant claims counsel was ineffective for failing to mitigate the prejudicial effect of the testimony by cross-examining the victims' mother regarding his criminal history. But the trial court struck the testimony and instructed the jury to disregard it, which cured any prejudice. Defendant has not shown that cross-examination on his criminal history would have been reasonable strategy or outcome-altering.

Nor has defendant established a reasonable probability that the outcome would have been different had trial counsel objected to the detective's testimony about AE's demeanor. As explained above, the detective's brief and nonspecific description did little to bolster AE's detailed trial testimony. The absence of an objection does not create a reasonable probability of a different result.

Counsel was likewise not ineffective for failing to object to the other-acts evidence. An objection based on the argument that prior domestic violence is inadmissible when the charged offense is sexual assault would have been futile because MCL 768.27b permits admission of both. Nor was an objection warranted under MRE 403 given our conclusion that the probative value of the evidence was not substantially outweighed by unfair prejudice.

Finally, defendant has not established the factual predicate for his claim that counsel was ineffective for failing to object to the lack of notice under MCL 768.27b(2). The record contains no filed notice, but the statute does not require that notice be filed or incorporated into the record. The silence of the record does not demonstrate that the prosecutor failed to notify defense counsel through other means. Defendant has not provided an affidavit from counsel averring that notice was not given, and nothing in the record supports that claim. Without the necessary factual predicate, the argument fails. See *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(2015) (holding that the defendant "bears the burden of establishing the factual predicate for his claim").

Even if the record did support defendant's claim, he has not shown prejudice. The victims' mother testified only that there were two physical altercations during the relationship, that they were infrequent, and that she did not call the police. She gave no details identifying the aggressor, and her testimony did not explicitly implicate defendant. The jury could infer that defendant committed domestic violence, but the testimony was equally consistent with the inference that the mother did. To the extent the testimony supported an inference adverse to defendant, it was weak and ambiguous. Against the backdrop of the victims' detailed testimony about the sexual assaults, which the jury found credible, defendant has not shown a reasonable probability that the outcome would have been different had counsel objected.

## E. CUMULATIVE ERROR

Next, defendant contends that the cumulative effect of the foregoing errors denied him a fair trial. "Although one error in a case may not necessarily provide a basis for reversal, it is possible that the cumulative effect of a number of minor errors may add up to error requiring reversal." *People v Anderson*, 166 Mich App 455, 472-473; 421 NW2d 200 (1988). We review claims of cumulative error "to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

The only identifiable errors are (1) the reference to defendant's prior incarceration and (2) the detective's testimony that AE pointed to parts of her body during the forensic interview. Neither error, alone or in combination, deprived defendant of a fair trial. Regarding the first, the trial court instructed the jury to disregard the testimony, and "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Abraham*, 256 Mich App at 279. Regarding the second, the detective's vague description added little to AE's detailed in-court testimony. Defendants are entitled to a fair trial, not a perfect one. *People v Mosko*, 441 Mich 496, 503; 495 NW2d 534 (1992). The cumulative effect of these two errors was minor and did not warrant a new trial.

## F. LIFETIME SORA REGISTRY

Defendant next asserts that lifetime registration under the SORA constitutes cruel or unusual punishment.

We review constitutional questions de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011) (citation omitted). "A party challenging the constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022).

"The Michigan Constitution prohibits cruel or unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII. If a punishment passes muster under the state constitution, then it necessarily passes

muster under the federal constitution." *People v Burkett*, 337 Mich App 631, 636; 976 NW2d 864 (2021) (citations omitted).

As a threshold matter, the applicable constitutional prohibitions apply only to "punishments." Our Court recently held that lifetime registration under SORA is not a punishment when imposed on defendants convicted of CSC-I. See *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 13 (holding that lifetime registration under SORA is not a punishment when applied to CSC-I offenders). Although *Kiczenski* involved an ex post facto challenge rather than a cruel-or-unusual-punishment challenge, the Court emphasized that both inquiries require the same framework set forth in *Kennedy v Mendoza-Martinez*, 372 US 144; 83 S Ct 554; 9 L Ed 2d 644 (1963). *Kiczenski*, ___ Mich App at ___; slip op at 7 n 4. Because defendant stands convicted of CSC-I, his cruel-or-unusual-punishment challenge necessarily fails.

## G. LIFETIME ELECTRONIC MONITORING

Defendant challenges the requirement that he submit to lifetime electronic monitoring, contending that it constitutes cruel or unusual punishment and that it amounts to an unreasonable search.

### 1. CRUEL OR UNUSUAL PUNISHMENT

This Court resolved the same issue in *People v Hallak*, 310 Mich App 555, 571, 577; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016), holding that lifetime electronic monitoring is a punishment, but not a cruel or unusual one, for defendants 17 or older convicted of CSC against a victim under 13. Defendant, who was over 17 and convicted of both CSC-I and CSC-II against victims under 13, falls squarely within that holding. His challenge therefore fails.

### 2. UNREASONABLE SEARCH

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021); see also US Const, Am IV; Const 1963, art 1, § 11. "[A]n electronic monitoring device to monitor defendant's movement constitutes a search for purposes of the Fourth Amendment." *Hallak*, 310 Mich App at 579. But "that conclusion does not end the Fourth Amendment inquiry, as the Fourth Amendment only precludes *unreasonable* searches." *Id*.

To determine whether a search is reasonable, we consider "all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Id*. (citation omitted). "The applicable test in determining the reasonableness of an intrusion is to balance the need to search, in the public interest, for evidence of criminal activity against invasion of the individual's privacy." *Id*. (citation omitted).

In *Hallak*, this Court held that "lifetime electronic monitoring for a defendant 17 years or older convicted of CSC-II involving a minor under 13 is not unreasonable." *Id*. The Court reasoned that "when enacting this monitoring system and requiring it only for those 17 or older who commit CSC against children under the age of 13, the Legislature was addressing punishment,

deterrence, and the protection of some of the most vulnerable in our society against some of the worst crimes known." *Id*. at 580. The Court further explained that lifetime monitoring "assists law enforcement efforts to ensure that these individuals, who have committed the most egregious and despicable of society and criminal offenses, do not frequent prohibited areas (elementary schools, etc.) and remain compliant with the SORA." *Id*. (cleaned up). The Court acknowledged that "such monitoring of a law-abiding citizen would be unreasonable" but concluded that, in this context, "the strong public interest in the benefit of monitoring those convicted of CSC-II against a child under the age of 13 outweighs any minimal impact on defendant's reduced privacy interest." *Id*. at 581.

That decision remains binding precedent. See MCR 7.215(C)(2). Consistent with *Hallak*, the requirement that defendant submit to lifetime electronic monitoring does not violate the Michigan or United States Constitution.

## III. CONCLUSION

In sum, we affirm defendant's convictions and sentences but remand for the ministerial task of correcting the judgment of sentence to reflect the imposition of lifetime electronic monitoring.[5]

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[5] The trial court stated at sentencing that defendant was required to submit to lifetime electronic monitoring "per the statute," and defendant does not dispute that such monitoring was imposed; rather it is the basis of his final argument on appeal.

-11-